```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
                                            06 Civ. 14334 (WCC)
DANIEL and MALLORY O'SHEA, Individually :
and as the parents of a disabled child,     ECF CASE
S.O.,                                   :

                Plaintiffs,             :

        - against -                     :    OPINION
                                             AND ORDER
THE BOARD OF EDUCATION OF THE           :
POUGHKEEPSIE CITY SCHOOL DISTRICT,
                                        :
                Defendant.
                                        :
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

                                                FAMILY ADVOCATES, INC.
                                                **Attorneys for Plaintiffs**
                                                209 Clinton Avenue
                                                Kingston, New York 12401

ROSALEE CHARPENTIER, ESQ.

       Of Counsel

                                                SHAW, PERELSON, MAY & LAMBERT, LLP
                                                **Attorneys for Defendant**
                                                40 South Roberts Road
                                                Highland, New York 12528

MARK C. RUSHFIELD, ESQ.

       Of Counsel

**Copies E-Mailed to Counsel of Record**

**CONNER, Senior D.J.:**

Plaintiffs Daniel and Mallory O'Shea, individually and as parents and legal guardians of their daughter S.O., bring this action for attorneys' fees pursuant to the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. In an earlier case involving the same parties, this Court held that plaintiffs were entitled to tuition reimbursement for S.O.'s private-school placement during the 2001-2002 school year under the IDEA's "pendency provision," 20 U.S.C. § 1415(j). *See Bd. of Educ. v. O'Shea*, 353 F. Supp. 2d 449, 459-60 (S.D.N.Y. 2005) (Conner, J.) ("*O'Shea I*"). Plaintiffs now move for summary judgment on the grounds that they are entitled to attorneys' fees under the IDEA as prevailing parties to an earlier state review officer's ("SRO") ruling on the tuition-reimbursement claim. Defendant, the Board of Education of the Poughkeepsie City School District ("the District") cross-moves for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c), arguing, *inter alia*, that plaintiffs are not prevailing parties within the meaning of the IDEA. For the reasons set forth below, plaintiffs' motion is denied and defendant's motion is granted.[1]

**BACKGROUND**

The facts of this case are set out in detail in *O'Shea I*, familiarity with which is presumed. Accordingly, we recite only the facts relevant to our resolution of the present issues.

---

[1] Defendant offers four arguments in support of its motion: (1) plaintiffs' claim is barred by *res judicata*; (2) plaintiffs' claim is untimely because it was not filed within the time period required by FED. R. CIV. P. 54(d); (3) the applicable statute of limitations has run; and (4) plaintiffs are not prevailing parties under the IDEA. (Def. Mem. Supp. Mot. J. Pldgs. at 2.) Because we agree that plaintiffs are not prevailing parties for purposes of this action, we do not reach the other three issues.

1

S.O. was classified as speech impaired while she was in kindergarten. *Id.* at 450. Because she had made significant progress in speech therapy by the beginning of her third-grade year, the Committee on Special Education ("CSE") adopted the school psychologist's recommendation that S.O. be de-classified. *Id.* But during her third-grade year, S.O.'s classroom teacher noticed that S.O. was easily distracted and overwhelmed by ordinary reading assignments. *Id.* at 451. Before the start of her fourth-grade year, the CSE re-classified S.O. as learning disabled, again acting on the school psychologist's recommendation. *Id.*

The CSE then created an individualized education plan ("IEP") for S.O.'s fourth-grade year. *Id.* Her parents, however, were unsatisfied with the IEP, and they notified the District of their intention to enrol S.O. in a private school, Kildonan, for the 1999-2000 school year. *Id.* They also requested that the District reimburse them for the cost of tuition. *Id.* Thus began a series of impartial hearings and SRO reviews of the appropriateness of S.O.'s IEP and private-school placement, all of which ultimately led to *O'Shea I*.

By the time *O'Shea I* was litigated, S.O. had been at Kildonan for four school years, from 1999-2000 to 2002-03. *See id.* at 451-52. The administrative review of S.O.'s placement began in 2001, when plaintiffs requested an impartial hearing to review her IEP and seek tuition reimbursement for the 1999-2000 and 2000-01 school years. *Id.* at 451. The first impartial hearing was conducted by Independent Hearing Officer ("IHO") Sienko between November 20, 2001 and July 29, 2002. *Id.* at 452. IHO Sienko awarded plaintiffs tuition reimbursement for the 1999-2000 and 2000-01 school years, and the District appealed to the SRO, which led to SRO Decision No. 02-101. *Id.*

On October 3, 2002, plaintiffs requested another impartial hearing, this time seeking review

of S.O.'s 2001-02 IEP as well as tuition reimbursement for that school year. *Id.* IHO Wanderman denied the reimbursement request, and plaintiffs appealed to the SRO. *Id.*

The first SRO decision (SRO Decision No. 02-101, reviewing IHO Sienko's decision) was issued on December 10, 2003. *Id.* at 453. The SRO held that plaintiffs were not entitled to tuition reimbursement for the 1999-2000 school year because their request had been untimely, but they were entitled to reimbursement for 2000-01 because Kildonan was the proper placement for S.O. that year and that request had been timely. *Id.* The second SRO decision (SRO Decision No. 03-052, reviewing IHO Wanderman's decision) was rendered the next day. *Id.* The SRO overruled IHO Wanderman, concluding that Kildonan was S.O.'s proper placement for the 2001-02 school year and that plaintiffs were therefore entitled to tuition reimbursement for that year. *Id.* The District then brought suit in this Court, seeking an order vacating SRO Decision No. 03-052. *Id.* at 451. We dismissed the District's action, holding that plaintiffs were entitled to reimbursement for the 2001-02 school year under the IDEA's "pendency provision," 20 U.S.C. § 1415(j). *Id.* at 459-60.

## DISCUSSION

### I. <u>Standard of Review</u>

In deciding defendant's Rule 12(c) motion, we must "accept[] the allegations contained in the complaint as true and draw[] all reasonable inferences in favor of the nonmoving party." *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (internal quotations and citation omitted). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent dismissal under Rule 12(c)." *Zamierowski v. Nat'l R.R. Passenger Corp.*, No. 05 Civ. 9309, 2006 U.S. Dist. LEXIS 46616, at *12 (S.D.N.Y. June 28, 2006) (Conner, J.) (internal quotations and

3

citation omitted). A claim should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002) (internal quotations and citation omitted). The complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 44, 47 (2d Cir. 1991).

In deciding whether to grant plaintiffs' summary judgment motion, we must determine whether there is any genuine issue of material fact and whether plaintiffs are entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The court must resolve all ambiguity in favor of the non-moving party and draw every permissible factual inference in that party's favor. *See Anderson*, 477 U.S. at 255.

## II. **<u>The IDEA</u>**

The goal of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). The IDEA provides for a "cooperative process . . . between parents and schools," and the IEP is the "central vehicle" for that process. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005). The statute requires state education authorities to "identify and evaluate disabled children, . . . develop an IEP for each one, . . . and review every IEP at least once a year." *Id.* (citations omitted). An IEP should "include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." *Id.* If a state fails to provide a handicapped child with a free and appropriate public education, the child's parents

4

may remove him or her to private school and seek retroactive tuition reimbursement from the state. *See Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006); *see also* 20 U.S.C. § 1412(a)(10)(C)(ii).

In the event that a parent is dissatisfied with a child's IEP, the IDEA allows him or her to lodge a complaint with the school and, if he or she is still not satisfied, request an impartial due-process hearing. *See J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119, 121 (2d Cir. 2002) (citing 20 U.S.C. §§ 1415(b)(6), (f)(1)). Either party may then appeal the result of the due-process hearing to an appropriate federal district court or state court. *See* 20 U.S.C. § 1415(i)(2). The IDEA also grants district courts the discretion to award "reasonable attorneys' fees" to the "prevailing party." 20 U.S.C. § 1415(i)(3)(B).

In deciding a petition for attorneys' fees under a federal fee-shifting statute such as the IDEA's, a court must follow a two-step process: "It must first determine whether the party seeking the award is in fact a prevailing party. If the party is a prevailing party, the court must then determine whether, under the appropriate standard, that party should be awarded attorney's fees." *Mr. L. v. Sloan*, 449 F.3d 405, 407 (2d Cir. 2006). Because we conclude that plaintiffs are not prevailing parties within the meaning of the IDEA, our analysis begins and ends with the first step.

### III. The Meaning of Prevailing Party

The Supreme Court has defined a "prevailing party" as "one who has been awarded some relief by the court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). A favorable outcome alone is not enough, however. To be considered "prevailing" for purposes of the IDEA, a party "must not only achieve some 'material alteration of

the legal relationship of the parties,' but that change must also be judicially sanctioned." *Roberson v. Giuliani*, 346 F.3d 75, 79-80 (2d Cir. 2003) (quoting *Buckhannon*, 532 U.S. at 603, 605).[2]

The Supreme Court has cited enforceable judgments on the merits and court-ordered consent decrees as examples of outcomes that create the "material alteration" necessary for prevailing-party status. *See Buckhannon*, 532 U.S. at 604. And the Second Circuit has held that "an IHO's decision on the merits in an IDEA proceeding" also gives rise to prevailing-party status because it changes the legal relationship of the parties and is enforceable by a court. *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 76 (2d Cir. 2005). The court cited the provision of the IDEA that permits the awarding of attorneys' fees "to a prevailing party" in "any action or proceeding" brought under the IDEA, and it concluded that, "[i]n the context of the IDEA, 'proceeding' refers to, or at least includes, an administrative proceeding." *Id.* at 75 (citing 20 U.S.C. §§ 1415(i)(3)(B), (i)(3)(D)(i)); *see also Mr. L.*, 449 F.3d at 407.

A.     **The Effect of SRO Decision No. 02-101**

Plaintiffs seek to recover attorneys' fees in the amount of $31,675 "for the prosecution of the parents' 2001-02 claim" and the instant case. (Complt., Prayer for Relief ¶ 2.) The "2001-02 claim" was the subject of the Wanderman hearing, SRO Decision No. 03-052 and *O'Shea I*. *See O'Shea I*, 353 F. Supp. 2d at 453. Plaintiffs are not seeking fees incurred in *O'Shea I*. (*See* Pls. Mem. Opp. Mot. J. Pldgs. at 8.) Therefore, the issue before us is whether the plaintiffs are entitled to attorneys'

---

[2] Although *Buckhannon* involved a claim under 42 U.S.C. § 1988, the Second Circuit has instructed that "Congress intended 'prevailing party' under the IDEA to have the same meaning as 'prevailing party' under § 1988." *J.C.*, 278 F.3d at 124.

fees strictly as a result of SRO Decision No. 03-052,[3] which reversed IHO Wanderman and ruled that they were entitled to tuition reimbursement for the 2001-02 school year.

Our decision in *O'Shea I* largely dictates the outcome here. In that earlier case, the District asked this Court to vacate SRO Decision No. 03-052, which found that Kildonan met S.O.'s educational needs for the 2001-02 school year and awarded tuition reimbursement. *Id.* Neither the appropriateness of S.O.'s 2001-02 IEP nor that of her school placement that year was actually at issue in *O'Shea I*, however. *Id.* at 455. Rather, the District argued that the SRO erred as a matter of law because the parents' claim for tuition reimbursement was time-barred. *Id.* We did not reach that issue (or the District's related argument that the parents were collaterally estopped from arguing that their claim had been timely) because we concluded that the parents were entitled to reimbursement under the IDEA's "pendency provision," 20 U.S.C. § 1415(j).

The IDEA's "pendency provision" provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." *Id.* The Second Circuit has stated that under this provision,

> the inquiry focuses on identifying "the then current educational placement," and, further, on who should pay for it, for implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the [IDEA].

*Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir. 2004) (quoting *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982)). Under the New York State

---

[3] The parties appear to have reached a private settlement regarding attorneys' fees related to SRO Decision No. 02-101. (*See* Pls. Stmt. Material Facts Not in Dispute ¶ 17.)

and federal regulations implementing the IDEA, a "'child's current educational placement may be changed upon agreement between the parents and the state, and an SRO decision that "agrees with the parents that a change of placement is appropriate . . . must be treated as such an agreement."'" *O'Shea I*, 353 F. Supp. 2d at 456 (quoting *Mackey*, 386 F.3d at 163).

In *O'Shea I*, we held that SRO Decision No. 02-101 established Kildonan as S.O.'s pendency placement and that the decision applied retroactively. *Id.* at 458. As a result of that retroactive application,

> Kildonan became S.O.'s appropriate placement at the start of the 2000-01 school year because . . . it was at that point that the Parents were no longer in violation of the IDEA's "pendency provision" and their placement of S.O. at Kildonan was no longer unilateral. Consequently, the District became financially responsible for S.O.'s tuition at Kildonan on a pendency basis from the 2000-01 school year forward unless and until a subsequent change in placement occurred. We are unaware of any subsequent change in S.O.'s placement, and in any case, the Parents are entitled to tuition reimbursement at least through December of 2003, which is when both the first and second SRO decisions were rendered and which encompasses the 2001-02 school year.

*Id.* at 459. In the instant case, the District argues that the plaintiffs are not entitled to attorneys' fees for prevailing in SRO Decision No. 03-052 because "it was the plaintiffs' ultimate success . . . in SRO Case No. 02-101, together with . . . *O'Shea I*, which served as the basis for the retroactive pendency determination of the Court which resulted in them securing tuition reimbursement for their child for the 2001-2002 school year." (Def. Mem. Opp. Summ. J. at 3-4.) Therefore, plaintiff's appeal in SRO Decision No. 03-052, which was decided one day after SRO Decision No. 02-101, "was already moot before the SRO rendered his decision . . . and cannot serve as a predicate for prevailing attorney fees under the IDEA." (*Id.* at 4.) We agree.

In order to achieve prevailing-party status under the IDEA, a plaintiff must achieve a

"'material alteration of the legal relationship of the parties'" that is "judicially sanctioned." *Roberson*, 346 F.3d at 79-80 (quoting *Buckhannon*, 532 U.S. at 603, 605). Plaintiffs did not achieve any change in their relationship to the defendant, material or otherwise, as a result of SRO Decision No. 03-052. In that decision, the SRO ruled that Kildonan was S.O.'s proper placement for the 2001-02 school year and that plaintiffs were entitled to tuition reimbursement from defendant. (Charpentier Aff. Supp. Summ. J. ¶ 22.) But SRO Decision No. 02-101, issued the previous day, had the effect of making Kildonan S.O.'s proper placement from 2000-01 until at least 2002-03. *O'Shea I*, 353 F. Supp. 2d at 459. SRO Decision No. 03-052 therefore did not produce a "material alteration of the legal relationship of the parties." *See Roberson*, 346 F.3d at 79-80. Plaintiffs had already become entitled to the relief they sought, and they would have been entitled to it even if they had lost the hearing for which they now seek prevailing-party status. *See O'Shea I*, 353 F. Supp. 2d at 459 ("[E]ven if we were to agree with the District and determine that the Parents claim for 2001-02 tuition reimbursement should have been barred by a one-year statute of limitations, the Parents would still be entitled to tuition reimbursement for the 2001-02 school year based on pendency alone.").

Plaintiffs' argue that they are entitled to attorneys' fees because they prevailed on "the merits of their claim," and on "the substantive issues" in SRO Decision No. 03-052. (Pls. Mem. Supp. Summ. J. at 7.) Specifically, they point to defendant's admission in the SRO proceeding that its 2001-02 IEP was inadequate, as well as the SRO's findings that S.O. made progress at Kildonan that year and that equitable considerations supported the plaintiffs' claim for tuition reimbursement. (*See* Charpentier Reply Aff. Supp. Summ. J. ¶¶ 13-14.)

These findings represent the SRO's application of the two-part *Burlington* test for

determining a parent's right to tuition reimbursement under the IDEA. (*See* SRO Decision No. 03-052 at 2.) Under *Burlington*, parents are entitled to reimbursement when the school district's proposed IEP was inappropriate and the private placement was appropriate; equitable considerations are also a factor. *See Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 111 (2d Cir. 2007) (citing *Sch. Comm. of the Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985)); *see also B. ex rel. M.B. v. E. Granby Bd. of Educ.*, No. 05-6621-cv, 2006 U.S. App. LEXIS 27014, at *4 (2d Cir Oct. 27, 2006). The findings the SRO made in applying this test, "substantive" though they may be, do not change the fact that his ultimate conclusion did not alter the legal relationship between the parties, and thus can not confer prevailing-party status. *See Buckhannon*, 532 U.S. at 603; *A.R.*, 407 F.3d at 67; *Roberson*, 346 F.3d at 79-80.

### B. The Settlement of Plaintiffs' Claim for 2002-03 Tuition Reimbursement

Plaintiffs also argue that they achieved prevailing-party status through SRO Decision No. 03-052 because their success in that proceeding led to their receiving tuition reimbursement for the 2003-04 school year pursuant to a voluntary settlement agreement with defendant. (*See* Charpentier Reply Aff. Supp. Summ. J. ¶ 16.) In January 2003, plaintiffs and defendant entered into a settlement agreement of plaintiffs' tuition-reimbursement claims for the 2002-03 school year. (*Id.*) The agreement provided that "'for 2003-04, the child's status quo placement shall be dictated by the outcome of proceedings regarding the 2001-02 school year.'" (*Id.*) Plaintiffs contend that they are prevailing parties because "but for prevailing [in SRO Decision No. 03-052, plaintiffs] would not have held the requisite legal relationship with the school district to claim tuition reimbursement for 2003-04" under the settlement agreement. (*Id.*)

10

This argument is foreclosed by the Supreme Court's rejection of the "catalyst theory" of prevailing-party status. *See Buckhannon*, 532 U.S. at 601-02. Under the "'catalyst theory' . . . a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* Though it rejected this standard, the Court in *Buckhannon* indicated that a consent decree would give rise to prevailing-party status. The Second Circuit, in applying *Buckhannon* to the IDEA, has held that plaintiffs who obtained "the administrative analog of a consent decree" – a settlement agreement that was "so ordered" by an IHO – were entitled to attorneys' fees as prevailing parties. *A.R.*, 407 F.3d at 77.

But the court also made clear that a plaintiff who entered into a purely private settlement would not be a "prevailing party," "no matter how favorable the settlement is to plaintiff's interests." *Id.* This is because "[w]here an administrative proceeding results in a purely private settlement, a defendant's change in conduct, although perhaps accomplishing what the plaintiff sought to achieve, lacks the necessary administrative imprimatur on the change in the legal relationship between the parties." *Id.*; *see also Mr. L.*, 449 F.3d at 408 ("[T]he parties' settlement here, unlike that in *A.R.*, was purely private and therefore does not constitute an administratively sanctioned change in the legal relationship of the parties . . . . We therefore conclude that [plaintiff] is not a prevailing party . . . to whom the district court, in its discretion, could have granted attorney's fees."); *J.S. v. Ramapo Cent. Sch. Dist.*, 165 F. Supp. 2d 570, 575 (S.D.N.Y. 2001); *P.O. ex rel. L.T. v. Greenwich Bd. of Educ.*, 210 F. Supp. 2d 76, 84-85 (D. Conn. 2002). Here, there is no indication that the parties' settlement of the 2003-04 tuition claim was ever "so ordered" by an IHO. There is no reason to consider it the "administrative analog of a consent decree." *See A.R.*, 407 F.3d at 77. It is a purely private agreement lacking the "administrative imprimatur" necessary to confer "prevailing-party"

status. *See Mr. L.*, 449 F.3d at 408.

## CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for summary judgment for attorneys' fees is denied and defendant's motion for judgment on the pleadings is granted. The action is dismissed with prejudice, but without costs or attorneys' fees. Judgment to be entered by the Clerk of the Court.

SO ORDERED.

Dated: White Plains, New York
       October 31, 2007

                                              */s/ William C. Conner*
                                            Sr. United States District Judge